(No. 63592.—

*In re* WILLIAM STARNES BEATTY *et al.*, Attorneys, Respondents.

*Opinion filed December 21, 1987.*

Jerome Larkin, of Chicago, for the Administrator of

the Attorney Registration and Disciplinary Commission.

Ray Freeark and Ted Dennis, of Freeark, Harvey & Mendillo, of Belleville, for respondent William Starnes Beatty.

Leon G. Scroggins, of Granite City, respondent *pro se*.

Leonard M. Ring and Associates, of Chicago (Leonard M. Ring and Leslie J. Rosen, of counsel), for respondent Morris B. Chapman.

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for respondents Jon G. Carlson, L. Thomas Lakin and William W. Schooley.

JUSTICE WARD delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a two-count complaint on April 6, 1984, charging William Starnes Beatty, Morris B. Chapman, John Gordon Carlson, Lowell Thomas Lakin, William Wallace Schooley, Jr., and Leon G. Scroggins, with violating the Illinois Code of Professional Responsibility.

The first count of the complaint charged basically that the six respondents violated specified disciplinary rules by their conduct through a political committee that allegedly distributed false statements concerning two judges who are judges of the third judicial circuit and who were, as of August 1980, candidates for retention in office at the November 4, 1980, election. One of the judges was assigned to hear matters in Madison County and the other to matters in Bond County. It was charged that through the respondents a committee had been formed to oppose the retention of the two judges.

Count I charged that the six attorneys violated Rule 1—101(a)(2) by circumventing a disciplinary rule through

the actions of another; engaged in conduct involving fraud, deceit, or misrepresentation in violation of Rule 1—102(a)(4); engaged in conduct which is prejudicial to the administration of justice in violation of Rule 1—102(a)(5); violated Rule 8—102(a) by knowingly making false statements concerning the qualifications of a candidate for election or appointment to a judicial office; violated Rule 8—102(b) by knowingly making false accusations against a judge; violated canon 9 by engaging in conduct involving the appearance of impropriety; and engaged in conduct which brings the court and judicial profession into disrepute.

Count II of the complaint charged that respondents Chapman and Carlson hired an investigator to conduct a surveillance of an appellate court judge before whom they had appeals pending and that they sent the confidential report of the surveillance to the administrator of the Illinois courts. This count charged that respondents Chapman and Carlson, in violation of Rule 1—102(a)(5), engaged in conduct which was prejudicial to the administration of justice; that they violated Rule 9—101 by engaging in conduct involving the appearance of impropriety, and in conduct which brought the court and the legal profession into disrepute.

On March 1, 1985, on the respondents' motion, a panel of the Hearing Board of the Commission dismissed the complaint for failure to state a cause of action and granted the Administrator leave to file an amended complaint. On April 15, 1985, the Administrator filed a first amended complaint and the respondents again moved to dismiss the complaint. The hearing panel judged that this complaint, too, failed to state a cause of action and dismissed the amended complaint with prejudice on September 11, 1985. The Administrator filed exceptions with the Review Board to the hearing panel's action, and after briefing and argument the Board entered an order

stating that it "affirms the Memorandum Opinion and Order of the Hearing Board that the First Amended Complaint be dismissed with prejudice and adopts the rationale of the Memorandum Opinion and Order of the Hearing Board which is attached hereto." The chairman and three members of the Review Board joined in entering that order; two members recommended that the complaint be remanded for hearing and three members did not participate. (We would note that the Administrator, in discussing the nature of the case in his brief, makes a brief statement that the order of the Review Board was not the decision of the Board, as Attorney Registration and Disciplinary Commission Rule 753(d) states that the concurrence of not less than five members of the Board is necessary for a decision. It is not necessary that here we examine and discuss exhaustively the circumstances under which the rule will be literally applied and what is a "decision." It will be sufficient to state that under circumstances that appear here, including, as the panel's opinion put it, the "pendency of charges for an inordinate period of time," the question is whether the complaint did state a cause of action, and this court will examine and decide the question.)

Count I of the complaint set out that in August or September 1980 each of the respondents attended one or more meetings in the office of respondent Schooley and it was decided to oppose the retention of two circuit court judges. One judge was to be opposed upon their claim that he was overly lenient in sentencing in criminal cases and the other on the claimed ground he was not a productive judge. The respondents decided to form a committee of nonlawyers to prepare anti-retention statements based on the records of the clerk of the third circuit. Edward Nalefski, who was the office manager for the Chapman and Carlson law firm, was directed by the respondents to organize and operate the anti-retention

activity of the committee, which was named the "Committee for an Improved Judiciary." Nalefski, after September 18, 1980, when the committee was named, indicated to voters of Madison and Bond Counties that the membership of the committee consisted of himself and six other nonlawyers. Count I alleged that Nalefski held himself out as the secretary-treasurer of the committee and the other members of the committee included individuals recommended by the respondents. Most of the funds, $26,900 of $27,930 in cash contributions, were provided by respondents Schooley, Lakin, Scroggins, Chapman and Carlson. On October 12, 1980, respondent Lakin hired Michael Manning to assist Nalefski and Manning and Nalefski prepared and disseminated statements in furtherance of the anti-retention efforts. Respondent Beatty allegedly, on October 22, 1980, assisted Nalefski in the preparation of one such statement. It alleged that on October 17, 1980, Nalefski complained that he was having difficulty in gaining access to records of cases over which one of the judges presided and that Chapman prepared a petition for a writ of *mandamus*. On October 30 when the petition was denied, Carlson appeared in behalf of the petitioner Nalefski.

The complaint further stated that between October 22, 1980, and November 4, 1980, under the direction of respondents, Nalefski disseminated various statements in opposition to the two judges' campaigns for retention. These included letters to voters and statements to the media. The complaint charged that the statements were false in that they purported to be statements of a committee of nonlawyers. The complaint charged that the statements issued included ones that falsely represented one of the judge's sentencing record, including a failure to disclose that in many of the cases the sentence was imposed at the recommendation of the State's Attorney pursuant to a plea agreement and that the complaint

charged some of the statements falsely stated the percentage of convictions in which the judge had imposed probation rather than incarceration.

The statements included a claim that the other judge had tried only 13 cases to verdict in Bond County over the prior six years. It was said that the statement was false in that that number referred only to civil cases in which money damages were sought and did not include other matters over which the judge had presided.

The complaint alleged that Nalefski played recordings of certain of the statements referred to "for certain of the respondents, including but not limited to Chapman, Carlson, Schooley and Beatty." The complaint said that supporters of one of the judges issued press releases criticizing the accuracy of the statements and Manning was a participant at a press conference at which he expressed concern regarding the accuracy of the statistics in the committee's statements. The complaint said that on or before 1980 the respondents became aware of this criticism and that Schooley, Lakin and Beatty talked with Nalefski or Manning "regarding the matter"; that was the extent of the allegation. As of the date of the election, the respondents had not taken any action to correct the statements described and the complaints concluded that, "[a]s a result of the above outlined direction, the authorization and support given by the respondents to the activities of Nalefski outlined above, the respondents are professionally responsible for the false statements described in paragraph 7 above."' Paragraph 7 of the complaint, however, only states that "at all times alleged herein, Nalefski informed respondents in the progress of the anti-retention efforts."

Count II of the complaint alleged that respondents Carlson and Chapman had appeals pending before the Appellate Court of Illinois, in which the concerned judge had been a member of an appellate court panel before

whom Carlson participated in oral argument on June 27, 1978. The complaint alleged that on or about that date Carlson and Chapman engaged an investigator to conduct a surveillance of activities of the judge, which surveillance continued until about July 20, 1978.

The count alleged that there was an activity report and a supplement to it prepared and that the Chapman and Carlson law firm paid the investigator $2,061.

Count II stated that Chapman forwarded the report to the then director of the Administrative Office of the Illinois Courts and, according to the complaint, it was anticipated that the director would speak to the judge concerning the report. The respondents did not communicate with the Illinois Judicial Inquiry Board, according to the count.

As has been stated, the hearing panel dismissed the amended complaint with prejudice. The panel said that it can be readily acknowledged that false accusations should not be made by lawyers against judges or other persons but that the imposition of sanctions requires that the charging of lawyers with such conduct and the other parts of a disciplinary proceeding must strictly comply with the Code of Professional Responsibility and not violate constitutional protections, including those of freedom of speech. The panel noted that Commission rules require that a complaint state the essential facts of the misconduct charged and reasonably inform the accused lawyer of the alleged acts of misconduct and, in doing so, it must make factual charges rather than simply state conclusions.

The crux of count I of the complaint is that the six respondents knowingly made false statements against the two judges. The hearing panel observed that no such specific allegation is made in the complaint that the respondents made such statements, nor is it alleged that they specifically directed any other person, including the

members of the anti-retention committee, to make any specific false statement. The opinion stated that it was insufficient to say merely by way of conclusion that the anti-retention committee was under the control of the respondents. Simply stating that was not the equivalent of charging that the respondents directed the publication of false statements. Further, the panel observed that the complaint does not allege that the respondents knowingly made false statements. The panel noted that the Administrator's response to the respondents' motion to dismiss said defensively that the last paragraph of the complaint does make a conclusory statement alleging "that the facts stated in the previous paragraph established knowledge." The panel's opinion noted, however, that none of the preceding paragraphs did allege that the lawyers knowingly made false statements.

Responding to the motion to dismiss, the Administrator said that the panel would have to be naive to believe the respondents provided for the anti-retention committee but had no knowledge of its allegedly false statements. The panel's response was that allegations pertaining to the organization and funding of the anti-retention committee cannot be substituted for the requirement under the Code that a complaint allege "making knowingly false statements of fact." The panel stated that "the Complaint does not even allege that respondents knew the anti-retention committee would make false statements." The panel said further that "the Complaint shows a studied avoidance of any allegation that respondents *knowingly* made false statements." (Emphasis in original.) The panel said that it was obviously necessary that a complaint allege that whatever statements of fact were made were in fact false and that while the amended complaint, in contrast to the original complaint, at least made some specific statements of fact, it repeatedly made only conclusory allegations of

falsity, claiming that various statements were false because of "omissions, clever misstatements and false portrayals." The opinion observed that it was insufficient for the complaint merely to set out statements allegedly made and then state the conclusion that they were false. The complaint failed to allege how they were false or what was the truth. The panel stated that in dismissing the complaint with prejudice it found it significant that the Administrator was unable to state clearly the necessary elements of the complaint, such as: Who made the statements? Were they knowingly made? What were the specific statements made by each respondent? Were each of the statements false and in what manner? Were each of the statements claimed to be false material in the sense that they amounted to a violation of the Code of Professional Responsibility? The panel stated that the complaint had lumped allegations of misconduct as to the six respondents into a single count. This made it extremely difficult, if possible at all, for each respondent to be apprised of what facts had been charged as to him. Had the complaint been comprised of separate counts, each attorney would have known, as is obviously required, with what specifically he was accused. We would observe that had separate counts been drawn the result might have been that there would not have been charges made against all six of the attorneys.

The panel noted that the second count of the amended complaint was identical to the second count in the original complaint, except for its addition of a copy of the surveillance report. The panel noted that it simply failed, as did the original count, to allege sufficient facts to support a charge of misconduct and that in responding to the motions to dismiss, the Administrator had said simply that "tailing" a judge before whom one has cases pending is a matter everyone knows is wrong. The panel concluded that "tailing" a judge without more, being

factually alleged, did not constitute a violation of the Code. It observed that there was nothing in the surveillance report to change its conclusion and the only consequence of adding it to the complaint was that it had caused the fact that there was a report to become more widely known.

The rules of the Commission require that a complaint state the facts of the misconduct charged and inform the lawyer of what he or she is accused. That reflects, of course, the basic law regarding the nature of a complaint which requires that it contain a statement of facts constituting the cause of action claimed. A complaint that does not allege facts, the proof of which are necessary to entitle a plaintiff to judgment, fails to state a cause of action. The complaint must contain factual allegations of every fact which must be proved in order for the plaintiff to be entitled to judgment on the complaint, and a judgment cannot be rendered on facts demonstrated by evidence at trial unless those facts shown were alleged in the complaint. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 256-57; *Davis v. Thompson* (1979), 79 Ill. App. 3d 613, 616.) The specific allegations of facts that must appear in a complaint depend on the nature of the cause of action claimed. The complaint here must have charged personal professional misconduct as to each defendant and have made specific factual allegations. While a pleading will not be held to be bad in substance if it contains sufficient information as will reasonably inform a defendant of what he must defend against, that liberality of pleading will not relieve the necessity that a complaint contain sufficient, factual averments and set out every fact essential to be proved. *Rudnick v. Vokaty* (1980), 84 Ill. App. 3d 1003, 1007. See generally 2 C. Nichols, Illinois Civil Practice §§906, 907, at 104-08 (1979).

The amended complaint was properly dismissed. The count against the six respondents does not set out suffi-

cient allegations of facts in order to state a disciplinary cause of action, *i.e.*, it does not make allegations of facts necessary for the Administrator to establish the misconduct of each of the respondents. As the opinion of the hearing panel observed, the complaint makes no factual allegations even as to whether the statements were made knowingly by each of the respondents or who made the statements. It does not state the specific statements made by each respondent and how in particular they were false in substance and material so far as the professional offense of malpractice was concerned. The second count, too, lacks sufficient allegations of facts showing misconduct.

The question before us is not whether the complaint as a general statement describes conduct that if true invites disdain. The question is whether the amended complaint was legally sufficient, and we conclude it was correctly decided that it was not. "This court has repeatedly held that a complaint which does not allege facts, the existence of which are necessary to enable a plaintiff to recover does not state a cause of action and that such deficiency may not be cured by liberal construction or argument." *People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 152.

In view of the disposition we make, that is, confirming the dismissal of the complaint, it is not necessary to consider the constitutional contentions of the respondents that the attempted disciplinary action was in violation of the respondents' rights of speech, association and other assured liberties.

*Complaint dismissed.*