JAMES T. BECKMAN, Appellee, v. FREEMAN UNITED COAL MINING COMPANY, Appellant.

*Opinion filed July 20, 1988.*

282

STAMOS, J., took no part.

Quinn, Johnston, Henderson & Pretorius, of Peoria (Murvel Pretorius, Jr., and Rebecca S. Riddell, of counsel), and Gould & Ratner, of Chicago (Richard E. Elledge and Kathryn S. Mueller, of counsel), for appellant.

Steven W. Berg, of Springfield, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiff, James T. Beckman, filed this action in the circuit court of Macoupin County against defendant, Freeman United Coal Mining Company, to recover dam-

ages for a discharge allegedly in retaliation for the exercise of his rights under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.4 *et seq.*). Defendant moved to dismiss the action alleging that the cause of action was barred by a prior judgment and "the claim assessed against defendant is barred by other affirmative matters avoiding the legal effect of or defeating the claim." The circuit court granted defendant's motion and dismissed the action. The appellate court reversed (151 Ill. App. 3d 47), and we allowed defendant's petition for leave to appeal under Supreme Court Rule 315 (107 Ill. 2d R. 315(a)).

In January 1985, defendant reemployed plaintiff as a roof bolter after a nearly three-year layoff. During the course of his employment, defendant suffered an accidental injury on August 6, 1985. He was knocked unconscious for a short period of time and after 20 to 30 minutes he was taken to the hospital emergency room by ambulance, pursuant to company policy. At the emergency room, the treating physician told plaintiff to take the rest of the shift off but instructed him that he would be able to return to work the next day. Plaintiff worked August 7 and 8. On August 9, plaintiff called defendant's answering machine prior to the start of the shift and stated that he was having trouble with his neck and was going to have it checked. Plaintiff, however, did go to work to pick up his paycheck and to inquire about special forms to have his neck examined. The chief safety inspector, the mine manager and the superintendent were in the office when plaintiff inquired about the special forms. Plaintiff was told that he only needed to tell the doctor that it was related to his August 6 injury.

On Monday, August 12, plaintiff again called the recording machine prior to the start of his shift to report off. His message stated that since he could not get to the doctor on August 9, he was going to the doctor that

day. At 1:30 p.m. that day, plaintiff went to the office of Dr. James Hinchon. Thomas Mackey, a nurse practitioner, examined plaintiff and gave him a return-to-work slip that stated:

> "Please excuse Mr. Beckman from work on 8-9-85 and 8-12-85 because of work injury on 8-6-85 with neck pain. He was seen on 8-12-85 by Thomas Mackey, RN—Family Practitioner, at Dr. Hinchon's Meredosia office."

Plaintiff returned to work on August 13. On the next day, plaintiff's foreman told him that the company had questions about his return-to-work slip. At the end of his shift, plaintiff went to see his superintendent because the superintendent wanted to check out the slip. After he left work, plaintiff was called back to the mine and informed that he was being suspended with the intent to discharge for violating article XXII(i)(4) of the collective-bargaining agreement, which provides:

> "When an employee absents himself from his work for a period of two (2) consecutive days without the consent of the employer, other than because of proven sickness, he may be discharged."

After the meeting on August 16, defendant announced its intent to proceed with the discharge. The union requested an immediate arbitration pursuant to article XXIV(d) of the collective-bargaining agreement. At the hearing on August 21, the arbitrator announced his decision to deny the grievance.

Plaintiff consequently filed a complaint in the circuit court of Macoupin County on November 14, 1985, alleging that defendant discharged him in retaliation for his "intention to pursue a claim for his injury." (Plaintiff filed his workers' compensation claim after the denial of his grievance.) Plaintiff also alleged that defendant was violating section 4(h) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.4(h)). In response to plaintiff's complaint, defendant filed a motion to dismiss

with prejudice alleging that the arbitrator's finding of just cause for discharge barred plaintiff's action. On March 20, 1986, the circuit court entered its written order in light of its opinion expressed in a letter to the parties on March 12, 1986, finding that the arbitrator's finding of "just cause" for discharge barred plaintiff's retaliatory discharge action.

On appeal, the appellate court reversed the order of the circuit court, finding that *res judicata* did not apply because plaintiff had not placed the issue of retaliatory discharge before the industrial arbitrator. The appellate court further found that the arbitrator's decision was not necessarily a finding of "just cause."

Although defendant raises several issues on appeal in which the central issue is whether or not a union employee's subsequent action in the circuit court for retaliatory discharges is barred by the prior finding of an industrial arbitrator on the grounds of *res judicata*, this court finds that the cause of action was properly dismissed but on different grounds. This court "can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct." (*Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148.) In this case, this court finds that *res judicata* does not apply in this case based on the decision in *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, and instead finds that plaintiff has failed to state a cause of action. As a preliminary caveat to our discussion, we note that since neither party invoked the doctrine of Federal preemption at the trial level, we find that it has been waived in this appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500.) Accordingly, we will not consider defendant's issue on the matter and the additional authority.

For plaintiff to establish a *prima facie* case for retaliatory discharge, he must (a) establish that he exercised a statutory or constitutional right, (b) that he was discharged because of his activity, and (c) that defendant's conduct was motivated by unlawful considerations. (*Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65, 67.) In determining whether or not a complaint states a cause of action, this court recently held:

"[T]he basic law regarding the nature of a complaint *** requires that it contain a statement of facts constituting the cause of action claimed. A complaint that does not allege facts, the proof of which are necessary to entitle a plaintiff to judgment, fails to state a cause of action. The complaint must contain factual allegations of every fact which must be proved in order for the plaintiff to be entitled to judgment on the complaint, and a judgment cannot be rendered on facts demonstrated by evidence at trial unless those facts shown were alleged in the complaint." (*In re Beatty* (1987), 118 Ill. 2d 489, 499.)

If that complaint does not allege facts necessary to state a cause of action, that deficiency may not be cured by liberal construction or argument. 118 Ill. 2d at 500.

The only element at issue is the third element: whether or not the employer's actions were motivated by any unlawful considerations. Specifically, the issue is whether or not the employer was aware of plaintiff's intention to file. In his complaint, plaintiff alleged that after a work-related injury, he pursued his statutory right to workers' compensation. Plaintiff alleged that thereafter, defendant discharged him. In the complaint he specifically alleged:

"13. That engaging in the acts described in the foregoing paragraph, the Defendant, 'FREEMAN', did discharge the Plaintiff, JAMES T. BECKMAN, from his employment with that firm in retaliation for sustaining an injury for which he was entitled to benefits under the terms of the 'Workers' Compensation Act' and in pursu-

ing a claim for benefits as afforded to him by the terms of that act.

14. In engaging in the foregoing conduct, the Defendant, 'FREEMAN', did interfere with, restrain and coerce the Plaintiff, JAMES T. BECKMAN, and did discriminate or attempt to discriminate against him, in connection with the exercise by him of certain rights and remedies granted to him under the terms of the foregoing Act because of his intentions to exercise those rights and remedies, in violation of Section 4(h) of the 'Workers' Compensation Act' [48 Ill. Rev. Stat., par. 138.4(h)]."

As the petition stands, we find that plaintiff has failed to allege facts sufficient to establish the third element. We also find that the record does not reveal any facts, which even if plaintiff were allowed to amend the petition, would be sufficient for any petition to stand and as such this court remands this cause with directions to dismiss with prejudice.

Unlike cases where an at-will employee alleges retaliatory discharge, the union employee in this case has had a fact-finding hearing. The written findings of the arbitrator are given great weight by a court because at that hearing arbitrators become judges both of the law and fact, binding all parties to the proceeding. (*White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 604-05.) In the early years of arbitration, the arbitrators were not of the legal community and as such their findings could not be afforded a great deal of weight in the courtroom. Today, arbitrators are usually lawyers, persons capable of gathering and analyzing a great deal of information. In Illinois, where the employee has grounds to believe that the proceedings were tainted, the plaintiff may seek to vacate awards for the following reasons: (1) fraud, corruption or evident partiality; (2) the arbitrator exceeded his authority; (3) gross mistake of law or fact; (4) plain mistake of law if the arbitration agreement requires the decision to be made according to law; or (5) mistake of

law if the award shows on its face that the arbitrator intended to decide according to law but mistook or misconstrued it pursuant to section 12 of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 112). Under section 12, an employee has the opportunity to have an effective and immediate remedy in the circuit court. In this case, since plaintiff does not raise any allegations or argument regarding the proceedings or the parties, this court will give a great deal of weight to the findings of the arbitrator. Of significance is the fact that plaintiff concedes that he was discharged for just cause under the collective-bargaining agreement. If plaintiff had found or believed that the hearing was tainted in any way, he would have pursued an action in the circuit court pursuant to section 12 prior to filing this action.

In reviewing the allegations in the complaint separately and then with the arbitrator's findings and the record, this court finds that plaintiff cannot allege any more facts in an amended petition to sufficiently establish the employer's knowledge of any "intention" to file a claim. The arbitrator's opinion exhibits an exhaustive research and analysis of the situation.

The arbitrator found that plaintiff was not a stranger to the proceedings. Prior to being recalled, plaintiff had previously been charged with violation of the same article of the collective-bargaining agreement. Plaintiff knew or should have known the requisites to establish breach of the agreement. He knew that he had to provide proof of disability for the days he was off work. The record establishes, as the arbitrator found, that plaintiff did not prove disability. On the days off he was still able to make it into work for other matters, *i.e.*, his paycheck and medical forms. On the two days before his absence, he was able to work. He also failed to have a doctor sign a note stating that he was disabled for the days he had missed. A note signed by a nurse practitioner does not

equal the authority of a doctor or meet the requirements established in the collective-bargaining agreement. Besides, plaintiff with his prior experience should have known the wording of this article, especially since the union also stipulated that plaintiff knew of the consequences of not providing proof of illness. Plaintiff knew that proof of illness was required because he attempted to prove it through a slip signed by a nurse practitioner. Nothing in plaintiff's medical records established that he was unable to work on August 9 or 12, but in fact established that on August 9 and again on August 12 he was able to work. Thus, any knowledge of the company regarding a potential intention to file a workers' compensation claim by plaintiff cannot be established. This court cannot find that under these facts, plaintiff could have presented any more evidence of his intention to file before the circuit court than that which he presented at the arbitration hearing.

In all other cases regarding retaliatory discharge for filing a workers' compensation claim, the plaintiff has actually filed the claim prior to discharge. (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, *cert. denied* (1985), 472 U.S. 1032, 87 L. Ed. 2d 642, 105 S. Ct. 3513; *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1.) This court cannot in this particular case find that where an employee has incurred a work-related injury, the employer is on notice for a potential intention to file a workers' compensation claim, especially where no proof of disability has been exhibited but only a recurring pattern of absenteeism on the weekend (plaintiff was known to miss Fridays and Mondays frequently). Since the third element is material to the cause of action, plaintiff has failed to state a cause of action.

For the foregoing reasons, this court reverses the judgment of the appellate court, affirms the order of the circuit court, and remands the cause to the circuit court

with directions to dismiss with prejudice for failure to state a cause of action.

*Appellate court reversed;*
*circuit court affirmed;*
*remanded with directions.*

JUSTICE STAMOS took no part in the consideration or decision of this case.