MARY ANN BENHART *et al.*, Plaintiffs-Appellants, v. ROCKFORD PARK DISTRICT, Defendant-Appellee.

Second District   Nos. 2—90—1190, 2—90—1433 cons.

Opinion filed August 30, 1991.

Donald Q. Manning and Daniel T. Williams, both of Clark, McGreevy & Johnson, P.C., of Rockford, for appellants.

Michael W. Tootooian, of Ancel, Glink, Diamond & Cope, P.C., of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiffs, Mary Ann and Ray Benhart, appeal the circuit court's dismissal of their second amended complaint seeking damages for injuries Mary Ann suffered while at a facility owned by defendant, Rockford Park District. Plaintiffs' sole issue on appeal is whether the trial court erred in ruling that the first amended complaint failed to state a cause of action for willful and wanton conduct.

In count I of the first amended complaint, plaintiffs alleged that on June 18, 1988, Mary Ann paid an entrance fee and was admitted to the Magic Waters theme park and wave pool owned by defendant. Mary Ann entered the wave pool when "the automatic wave machine created a wave which made contact with Mary Ann Benhart causing her to lose her footing and fall." During 1987, the wave pool had a series of nonslip strips on the floor of the wave pool. According to plaintiffs, those strips were maintained for the purpose of providing a footing for bathers in the pool. Defendant intentionally removed the strips from the wave pool, "even though the non-slip strips or other non-slip devices were maintained in the pool to allow bathers to maintain their balance." Plaintiffs alleged that because of the absence of any nonslip strips, "and as a result of being contacted by the machine generated wave, Mary Ann Benhart was thrown about and her leg and knee were severely torn and lacerated, and various bones in the knee of Mary Ann Benhart were also fractured and dislocated." Plaintiffs alleged that the proximate cause of her injuries was the absence of the nonslip strips.

In addition, plaintiffs alleged that the absence of the strips created an unreasonably dangerous condition because the bathers could not rely on the floor of the wave pool to maintain their balance. According to plaintiffs:

> "Defendant's conduct in removing said non-slip strips or other non-slip devices was willful and wanton and in reckless disregard of the probability that individuals would suffer injury

in said wave pool in that Defendant's conduct in so removing the strips was in conscious disregard of Defendant's knowledge that the aforesaid strips were formerly maintained for the safety of bathers."

Count II alleged a cause of action for loss of consortium.

Defendant filed a motion to dismiss the amended complaint pursuant to section 2—615 of the Civil Practice Act (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). Defendant argued that the amended complaint was insufficient because it failed to allege willful and wanton conduct as defined in section 1—210 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—210). Specifically, defendant asserted that the amended complaint lacked allegations that removal of the strips caused injuries to others prior to Mary Ann's injury. In addition, defendant maintained that removal of the strips was done to make the wave pool more safe because "the very purpose of the wave pool is to move persons within the pool and in effect make person lose their balance." Defendant argued that the presence of nonslip strips was more likely to cause injury in a wave pool. Finally, defendant argued that the fact that the nonslip strips were placed in the pool for safety reasons does not mandate the conclusion that the removal of the strips necessarily created a dangerous condition.

Plaintiffs responded to the motion to dismiss by arguing that the amended complaint sufficiently alleged willful and wanton conduct based on the common-law definition stated in *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462. Defendant countered that the Tort Immunity Act was amended in 1986 in response to the " 'litigation crisis,' " and that the legislature enacted the statutory definition of willful and wanton to limit local entities' liability. Defendant also argued that the allegation that the lack of the strips was the proximate cause of the injury was pure speculation. The trial court dismissed the complaint, and plaintiffs' appeal followed.

■ When considering the sufficiency of a complaint dismissed pursuant to a section 2—615 motion, the reviewing court must determine whether the allegations in the complaint, when construed in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505.) If the complaint does not allege facts necessary to state a cause of action, the deficiency may not be cured by liberal construction. (*Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 287.) To avoid dismissal for failure to state a cause of action, the complaint must set

out sufficiently every essential fact to be proved. (*In re Beatty* (1987), 118 Ill. 2d 489, 499.) Conclusions of law or fact unsupported by specific factual allegations are not taken as true. *Burdinie*, 139 Ill. 2d at 505.

■ To plead a sufficient cause of action in negligence, the plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140.) Where, as here, the defendant is a local public entity (see Ill. Rev. Stat. 1989, ch. 85, par. 1—206) and the injury is based on the existence of a condition of public property used for recreational purposes, the plaintiff must also plead that the proximate cause of the plaintiff's injury was the governmental entity's willful and wanton conduct. Ill. Rev. Stat. 1989, ch. 85, par. 3—106.

According to plaintiffs, willful and wanton conduct is defined as:

" '[I]ntentional or *** committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by ordinary care.' " (*O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, quoting *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 429.)

Plaintiffs assert that their allegations are sufficient under this definition.

Defendant responds that the proper definition of willful and wanton is that set forth in section 1—210 of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—210). Section 1—210 provides:

" 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (Ill. Rev. Stat. 1989, ch. 85, par. 1—210.)

Section 1—210 went into effect on November 25, 1986. Defendant argues that this definition was meant to supersede the *O'Brien* common-law definition because the legislature amended the Tort Immunity Act "to protect local public entities and public employees from liability arising from the operation of government." Ill. Rev. Stat. 1989, ch. 85, par. 1—101.1(a).

Plaintiffs counter that the statutory definition and the common-law definition are indistinguishable and that the legislature, in amend-

ing the Tort Immunity Act, is presumed to have been aware of *O'Brien* and "the failure of the legislature to expressly disavow the *O'Brien* definition gives rise to a presumption that the legislature did not intend to change the previously existing definition."

■■ When a statute defines its own terms, those terms must be construed according to the definitions given them in the act. (*Beecher Medical Center, Inc. v. Turnock* (1990), 207 Ill. App. 3d 751, 754.) Although section 1—210 is not ambiguous, and ordinarily we would not look beyond the statutory language, we agree with defendant that the definitions are different.

■■ The legislature is presumed to have been aware of the *O'Brien* common-law definition. (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211.) That presumption does not support plaintiffs' argument, however, because it is presumed that the legislature intended to change the existing law when amending a statute that has been the subject of judicial interpretation. (*In re Marriage of Sutton* (1990), 136 Ill. 2d 441, 447.) Defendant argues that the 1986 amendment changed the law because the common-law definition of "willful and wanton" does not include the requirement of "a course of action."

Prior to the 1986 amendments, the Tort Immunity Act provided that for injuries occurring on property used for recreational purposes, plaintiffs would have to prove that the local public entity was "guilty of willful and wanton negligence." (Ill. Rev. Stat. 1985, ch. 85, par. 3—106.) The act did not include a definition of "willful and wanton." The 1986 amendments, in addition to including a definition of the term "willful and wanton," changed the wording of section 3—106. Section 3—106 currently states that a local public entity is immune from liability unless the local entity "is guilty of willful and wanton conduct." Ill. Rev. Stat. 1989, ch. 85, par. 3—106.

■■ When "the original statutory language is clear, the court has declined to view an amendment as simply clarifying the legislature's intention." (*State of Illinois v. Mikusch* (1990), 138 Ill. 2d 242, 252.) Since section 1—210 was added, we only will consider the language of section 3—106 as it existed prior to the amendment. Although section 3—106 used the term "willful and wanton negligence," but did not define it, section 3—106 was not ambiguous. The common-law definition of "willful and wanton," as quoted from *O'Brien*, was derived from the definition stated in *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328-29:

> "We have examined the various cases cited by defendant, and while it is to be noted that in many instances different word-

ing, language and terminology is employed by the different courts in various instances, the basic general concept of the term ["willful and wanton"] as applied to the facts in the particular cases has remained essentially the same. The basic element in all of these cases indicates that liability can be founded under such a cause of action where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved."

This foundational definition is nearly identical to that used in section 1—210, with the exception of the addition of the "course of action" language included in the statutory definition. We conclude that, while the substitution of the term "conduct" for the term "negligence" in section 3—106 and the addition of the statutory definition were implemented to clarify the law, section 1—210 was also designed to change the law, thereby limiting the liability of public entities.

Consequently, to plead a cause of action sufficiently for willful and wanton conduct, in addition to the *O'Brien* definition, plaintiffs needed to allege that defendant engaged in a course of action which proximately caused Mary Ann's injuries.

The first amended complaint alleges that on June 18, 1988, plaintiff paid a fee and entered defendant's "Magic Waters" water theme park and wave pool; that plaintiff entered the wave pool and subsequently the automatic wave machine created a wave which made contact with plaintiff and caused her to lose her footing and fall; that on June 18, 1988, the floor of the wave pool was not equipped with nonslip strips on the bottom; that during 1987 and previous years the wave pool had a series of nonslip strips which enabled bathers to maintain their balance; that said nonslip strips were removed from the wave pool sometime between 1987 and June 17, 1988; that such nonslip strips were removed even though these had been maintained in the pool to allow bathers to maintain their balance; that the removal of the nonslip strips was in conscious disregard of defendant's knowledge that the protection said strips previously provided would be absent commencing in 1988; that the absence of the nonslip strips caused plaintiff's fall, which resulted in permanent injuries to her leg and knee; and that at all times defendant owed a duty to plaintiff to refrain from engaging in willful and wanton conduct that was likely to cause injury.

Based upon these allegations, we interpret the first amended complaint as alleging sufficient facts to show the willful and wanton con-

duct of the defendant in the removal of nonslip strips was a course of action that caused Mary Ann's injuries.

We note that defendant contends the presence of nonslip strips actually may be a hazard in a wave pool. While riding a wave, a body surfer may slide along the bottom of the pool. The presence of nonslip strips might cause abrasions on the body surfer, whereas a smooth floor would decrease the chance of abrasions. Thus, defendant maintains that removing the nonslip strips may actually increase the safety of the wave pool. These are issues for a trier of fact to decide.

We do not agree with the trial court that the amended complaint fails to allege facts which constitute a cause of action; thus, the dismissal is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

BOWMAN, J., concurs.

JUSTICE DUNN, dissenting:

I disagree with the majority's conclusion that plaintiff alleged facts sufficient to support a cause of action for willful and wanton conduct. Plaintiff's complaint alleges only that a machine-created wave caused her to injure her leg and knee because the floor of the wave pool was smooth, slippery and otherwise could not be relied upon by the plaintiff to keep her footing after being knocked over by the wave. Plaintiff also alleges that in 1987, defendant maintained the floor of the wave pool with nonslip strips or other nonslip devices designed to prevent bathers from losing their balance when being contacted by machine-created waves.

The majority concludes the definition of willful and wanton conduct set forth in section 1—210 of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—210) was designed to change the existing definition set forth in *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, based mainly on the fact that section 1—210 adds language requiring a "course of action." I do not believe the definition set forth in section 1—210 was intended to alter the existing law. However, this issue need not be addressed in the present case because the plaintiff fails to allege facts sufficient to support a cause of action under either definition.

Under either definition, to establish an utter indifference to or a conscious disregard for the safety of others, the complaint must allege facts establishing that defendants knew or should have known of the

potential danger to bathers. (See *O'Brien*, 83 Ill. 2d at 469; *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 190.) Here, the allegations are insufficient to withstand defendant's motion to dismiss. Plaintiff does not allege intentional injury, nor does plaintiff allege that on prior occasions other bathers had been injured due to the lack of nonslip strips and that defendant knew of such injuries. Plaintiff merely alleged that nonslip devices were once maintained on the floor of the wave pool, but were removed. The act of removing the strips is not in and of itself sufficient to support this cause of action. The facts as alleged fail to demonstrate willful and wanton conduct under either definition.