(Nos. 41679, 41728 cons.—

JOHNKOL, INC., *et al.,* Appellants, *vs.* LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.,* Appellees.

*Opinion filed March 27, 1969.—Rehearing denied May 27, 1969.*

ELMER GERTZ, of Chicago, (WAYNE B. GIAMPIETRO, of counsel,) for appellants.

RAYMOND F. SIMON, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and HENRY N. NOVOSELSKY, Assistant Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiffs, Johnkol, Inc., a Delaware corporation, (hereafter Johnkol), and its president, Dean T. Kolberg, have appealed from two judgments of the circuit court of Cook County. One judgment, entered in an action under the Administrative Review Act (Ill. Rev. Stat. 1967, ch. 110, pars. 264 *et seq.*), affirmed a decision of the License Appeal Commission of the City of Chicago which affirmed the revocation of Johnkol's liquor license by the Local Liquor Control Commissioner. The other judgment dismissed the plaintiffs' petition for *mandamus* which sought to compel the License Appeal Commission to permit the licensee to remain open pending the administrative appeal and to compel the mayor of the city of Chicago to restore Johnkol's music

and dance, food, and tobacco licenses which had also been revoked.

Johnkol operated a restaurant-lounge known as "The Trip" in the city of Chicago and had been issued liquor, music and dance, tobacco and food licenses. On April 26, 1968, it was notified of a hearing to consider the revocation of its liquor license on the charge that on January 28 it had "permitted acts of indecency to be performed on the licensed premises by patrons." The hearing commenced on May 6, and following the testimony of an officer who had observed the occurrences in question, Johnkol requested and was granted a continuance. On May 7 additional arrests were made at "The Trip." A patron was charged with soliciting a plain clothes officer to engage in homosexual acts, and another charge was based on a separate solicitation of the same officer by one of Johnkol's bartenders. The bartender fled, but surrendered to the police two days later.

The Local Liquor Control Commissioner issued an emergency closing order on May 13, and Johnkol's music and dance, food and tobacco licenses were taken from the premises at the time of service of this order. The Commissioner scheduled a hearing on May 16 to hear evidence on five charges, one of which repeated the earlier charge concerning the events of January 28. The other charges concerned the May 7 occurrences. The hearing was continued until May 20 and upon its completion the Local Liquor Control Commissioner made findings on each of the five charges and ordered the revocation of Johnkol's liquor license. Johnkol filed a notice of appeal to the License Appeal Commission on May 24 and a hearing was held on June 7. On June 21, the License Appeal Commission affirmed the revocation of the license.

Upon administrative review, the circuit court also affirmed the revocation but reversed two of the five findings made by the Local Liquor Control Commissioner. The other three findings were:

That on January 28, 1968, officers and agents of the licensee corporation permitted acts of indecency to be performed on the licensed premises by patrons, contrary to the ordinances of the city of Chicago, the statutes of the State of Illinois, and the rules of the Illinois Liquor Control Commission.

On May 7, 1968, the licensee corporation, by and through its agent, Robert Plite, bartender, solicited another person in the licensed premises for the purpose of engaging in deviate sexual conduct contrary to the ordinances of the city of Chicago, the statutes of the State of Illinois and the rules of the Illinois Liquor Control Commission.

On May 7, 1968, the licensee corporation, by and through its agent, Robert Plite, bartender on the licensed premises, obstructed justice, in that he fled from the custody of police officers after being placed under arrest contrary to the ordinances of the city of Chicago and the Statutes of the State of Illinois and the rules of the Illinois Liquor Control Commission.

The controversy in this case focuses primarily upon the statutory procedures for review of an order of a local liquor control commissioner who revokes a liquor license. Section 7a of Article VII of the Liquor Control Act provides for the establishment of a License Appeal Commission in municipalities having a population of 500,000 or more (Ill. Rev. Stat. 1967, ch. 43, par. 152.) and appeals from orders of the local liquor commissioner in Chicago are reviewed by that body. Orders of local commissioners in smaller communities are reviewed by the Illinois Liquor Control Commission. Licensees who appeal to the State commission are permitted to resume the operation of their business pending decision by the reviewing agency. Licensees whose appeals go to the License Appeal Commission are not afforded a similar privilege. (See Ill. Rev. Stat. 1967, ch. 43, par. 149; see also Rule 23 of the Rules and Regulations of the

Illinois Liquor Control Commission.) Johnkol, whose premises have remained closed since the issuance of the emergency closing order on May 20, 1968, contends that the statute which sanctions this distinction violates section 22 of article IV of the constitution of Illinois.

This difference in treatment of licensees originated in an amendment to the statute in 1961. Prior to that modification, all licensees whose licenses had been revoked were permitted to resume business during the pendency of their administrative appeals. (Ill. Rev. Stat. 1959, ch. 43, par. 149.) In 1961 the provision which authorized the resumption of business pending administrative appeal by licensees in cities with a population of 200,000 or more was eliminated. (Laws of 1961, p. 3591, (H.B. 1016).) The parties are agreed that the comparable provision with respect to all other licensees remains in effect, although that provision is now expressed in terms of the licensee's ceasing to engage in business when the State commission affirms a local commissioner's order to suspend or revoke. Ill. Rev. Stat. 1967, ch. 43, par. 149.

We have been unable to discern any rational basis for this difference in the treatment of licensees, which turns upon a difference in the population of the municipality in which the licensed premises are located. It is true, of course, that the severe sanction of mandatory closing during the pendency of an appeal before the administrative agency would stimulate compliance with applicable statutes, ordinances, and rules. But compliance on the part of licensees throughout the State is equally to be desired, regardless of the population of the city in which their premises are located.

The primary difficulty with the statutory classification is that it is totally unrelated to the quality of the misconduct which brought about the revocation. The imposition of sanctions based upon population differentials rather than upon the conduct of the licensee means that identical misconduct

is attended by different consequences, depending upon the population of the city in which it occurs. This kind of classification is unrelated to any proper government objective. Moreover, in this case the special privilege or immunity granted to some licensees "is dependent upon a difference or condition made by the legislature, and not one that is inherent in the location to which the law applies. This kind of classification has not to our knowledge ever been approved by this court." *Giebelhausen* v. *Daley,* 407 Ill. 25, 39.

"The effect of the enactment of an invalid amendment to a statute is to leave the law in force as it existed prior to the adoption of such amendment." (*People ex rel. Barrett* v. *Sbarbaro,* 386 Ill. 581, 590; *see also, City of Monmouth* v. *Lorenz,* 30 Ill.2d 60, 67; *Giebelhausen* v. *Daley,* 407 Ill. 25, 48.) As we have noted, prior to the 1961 amendment, the statute provided that all licensees whose licenses had been revoked were permitted to resume business during the pendency of their administrative appeals. Only that portion of the 1961 amendment to section 5 of the Act which destroyed that equality of treatment is invalidated by our decision. (See *McDougall* v. *Lueder,* 389 Ill. 141, 155.) Absent legislative modification, licensees in all municipalities must be permitted to resume operation during the pendency of an administrative appeal from the order of a local liquor control commissioner.

The invalid statutory closing requirement has a direct bearing upon another procedural problem which this case presents. With respect to cities having a population of 500,-000 or more, section 5 of article VII of the Liquor Control Act provides: "Within 20 days after the filing of such appeal the license appeal commission shall render a decision sustaining or reversing the order of the local liquor commissioner." (Ill. Rev. Stat. 1967, ch. 43, par. 149.) In this case the decision of the License Appeal Commission was not rendered until 28 days after the appeal was filed; there is no dispute that the statutory limitation was not met. Relying

on *Carrigan* v. *Illinois Liquor Control Com.,* 19 Ill.2d 230, however, the defendants characterize the time limitation as directory, and therefore conclude that the legislature did not intend that noncompliance would afford a basis for relief from the revocation order. In the plaintiffs' view, the requirement is mandatory. If mandatory, the limitation "must be followed or the acts done will be invalid." *People* v. *Jennings,* 3 Ill.2d 125; *Zbinden* v. *Bonel County Community Unit School Dist.,* 2 Ill.2d 232, 236; *People ex rel. Little* v. *Collins,* 386 Ill. 83.

In *Carrigan* the issue was the effect of noncompliance with the requirement of section 8(a) of article VII of the Liquor Control Act that the State commission "shall receive and consider such application for rehearing within twenty (20) days from the filing thereof with the Secretary of the Commission." (Ill. Rev. Stat. 1957, ch. 43, par. 154.) The circuit court held that this provision was mandatory, and that the State commission lost jurisdiction to affirm the order revoking Carrigan's license because of its failure to comply with the statutory time limitation. The appellate court affirmed. (19 Ill. App. 2d 225.) Both courts reached their conclusions upon the ground that the licensee's tavern was required to remain closed during the pendency of the petition for rehearing. This court determined that the time limitation was directory rather than mandatory. It reached that conclusion, however, upon the ground that under the statute then in effect a licensee's business was permitted to remain open until the application for rehearing was passed upon, and that the licensee had therefore not shown that he had been injured by the commission's failure to act within the prescribed period.

It was against this background of judicial construction that the 1961 amendment was adopted at the next session of the General Assembly following the decision of this court. The language of the statutory time limitation is mandatory, and while the consequence of loss of jurisdiction for non-

compliance is not explicitly stated, the legislative purpose is unmistakable when the amendment is read in the light of the decisions which immediately preceded its enactment. We hold, therefore, that by its failure to render a decision within the period limited by the statute, the License Appeal Commission lost jurisdiction to affirm the order of the Local Liquor Control Commissioner. Consequently, Johnkol's liquor license must be reinstated.

Johnkol also argues that its music and dance, food, and tobacco licenses should be restored. While the ordinances authorizing the revocation of these licenses are independent of the statutory provisions that have been discussed, the defendants have chosen to rely on the liquor license proceedings in justification of the other revocations. Section 147—12 of the Municipal Code of Chicago provides that a music and dance .license "shall terminate upon the termination of the city retail license for the sale of alcoholic liquor," and the defendants argue that the confiscation of Johnkol's music and dance license was automatic upon the revocation of its liquor license. In light of our conclusion that revocation of the liquor license can not stand, no basis remains for the continued revocation of the complementary music and dance license.

The defendants similarly treated the revocation of Johnkol's food and tobacco licenses as irrevocably tied to the liquor license proceedings. In their motion for summary judgment in the plaintiffs' *mandamus* action, the defendants contended that the issues in that matter were identical to those in the plaintiffs' action for review of the decision of the License Appeal Commission. In this court the defendants have repeated that contention, concluding that the liquor license revocation hearing obviated the need for separate consideration of the food and tobacco licenses. The order of the circuit court denying the plaintiff's petition for *mandamus* rested upon the court's judicial notice of its affirmance of the License Appeal Commission's order. It is clear

that the plaintiffs received no independent adjudication of their claims with respect to these other retailing privileges, even though they followed the usual procedure of demanding return of the licenses in a *mandamus* action. Because the revocation of Johnkol's liquor license determined the action of the trial court with respect to the other licenses, we are of the opinion that those licenses must also be restored.

The judgments of the circuit court are reversed.

*Judgments reversed.*