LATIN SOCIAL CLUB, INC., Plaintiff-Appellee, *v.* ILLINOIS LIQUOR
CONTROL COMMISSION *et al.*, Defendants-Appellants.

Second District No. 76-173

Opinion filed November 18, 1977.

William J. Scott, Attorney General, of Chicago, and Erwin W. Jentsch, of Chicago (Imelda Terrazino, Assistant Attorney General, of counsel), for appellants.

Van R. Richards, Jr., of Geister, Schnell, Richards & Brown, of Elgin, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The Latin Social Club, Inc. (hereafter the "Latin Club"), an Illinois corporation operating a tavern in Elgin, Illinois, filed an action under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*), to review a decision of the Illinois Liquor Control Commission which affirmed the local Liquor Control Commissioner's revocation of the Latin Club's liquor license, and denial of the Latin Club's application for a renewal of its liquor license. The circuit court of Kane County reversed the order of the Illinois Liquor Control Commission and the Commission and the local Liquor Control Commissioner have appealed, contending that (1) the instant action was rendered moot when the City of Elgin passed an ordinance reducing the number of available liquor licenses by one; (2) that the circuit court erred when it held that the Illinois Liquor Control Commission lost jurisdiction to affirm the revocation order entered by the local Liquor Control Commissioner, when it failed to render a decision within 30 days after hearing the appeal, and (3) that the circuit court erred when it held that the findings of the local Liquor Control Commissioner were "against the greater weight of the evidence," and therefore, "contrary to Illinois law."

The relevant facts are as follows: On December 6, 1973, Alonzo Alvarado, the president and principal shareholder of the Latin Club, was served with a notice that a public hearing would be held before the Liquor Control Commissioner of the City of Elgin to determine whether the Latin Club's Class A liquor license should be suspended or revoked. The notice alleged that Alvarado was not eligible to hold a liquor license, since he had committed acts of violence and "engaged in other unlawful conduct on numerous occasions," and that the continued operation of the Latin Club threatened the public health, safety and welfare, and resulted in numerous disturbances, injury to persons, violations of the law, and police calls. Specific instances of misconduct, covering a period from February 1, 1971, to August 27, 1973, were set forth, along with the allegation that on February 24, 1972, the Latin Club's license was suspended for sale after hours and allowing persons to remain in the

licensed premises after hours, and that on January 28, 1970, the liquor license of the "Latin Social Club of Elgin," predecessor to the Latin Club, had been suspended for permitting intoxicated persons on the premises, conducting business so as to disturb the peace of the neighborhood, and selling liquor to an intoxicated person.

On January 24, 1974, a hearing on these charges was held before William L. Rauschenberger, the mayor of Elgin and local Liquor Control Commissioner. Counsel for the Latin Club stipulated to the license suspensions of February 24, 1972, and January 28, 1970. Counsel also stipulated that Alvarado had been convicted of disorderly conduct on March 9, 1971, and unlawful use of weapons on May 16, 1972. However, it was argued on behalf of the Latin Club that such evidence of prior convictions and suspensions should be excluded on various grounds, including relevance and estoppel.

Each side then presented evidence pertinent to a number of incidents involving Alvarado. The City of Elgin presented testimony by Officer Robert Call of the Elgin Police Department who stated that on February 1, 1971, Alvarado discharged a pistol on a busy street in Elgin. Gill Mauricio testified that Alvarado, without provocation, struck him on the lip at the Latin Club, on the evening of February 3, 1973. By contrast, Alvarado's testimony was that Mauricio had been involved in a fight and he denied that he ever struck Mauricio. Porfidio Olvirez, called by the City, testified that on August 27, 1973, Alvarado, without provocation, struck him from behind with a beer bottle at an establishment called the Redwood Inn. Olvirez admitted that he had consumed roughly eight "beers" prior to the incident. Olvirez said that the blow from Alvarado knocked out some of his teeth. Officer Call testified that he assisted in arresting Alvarado on August 27, 1973, and in searching Alvarado's car, discovered a gun in the glove compartment. Criminal charges arising out of incidents on August 27, 1973, were pending against Alvarado at the time of the hearing, and Alvarado did not testify concerning these events. However, William Smith, a bartender at the Redwood Inn, testified on behalf of the Latin Club that he "assumed" that he had worked on August 27, 1973. He stated that Olvirez had come into the bar "hurt and bleeding," and stayed "just long enough for [Smith] to ask him to leave." Smith said that he had not seen Alvarado in the Redwood Inn that evening. Uncontradicted evidence was presented that on July 22, 1973, Alvarado struck Rueben Munos outside of the Los Campos restaurant. No arrests were made as a result of this incident. Alvarado testified that he struck Munos because Munos insulted Alvarado and his family with a "dirty name." It was also established that on December 30, 1972, the police responded to a battery complaint at the Latin Club. As the officers entered the Latin Club, they observed Alvarado take a gun out of his back

pocket and pass it to an associate. Alvarado was placed under arrest and told that he would have to go to the police station with the officers. Officer Robert Christ testified that Alvarado began to "edge away" from the officers, toward the back door of the bar. The officers persuaded Alvarado to go outside with them. As the paddy wagon pulled up, Alvarado began to "fight" the officers, and resisted their efforts to place him in the paddy wagon. Alvarado kicked one of the officers twice before they were able to place him in the paddy wagon. Alvarado attempted to explain this incident during his testimony, by stating that one of the officers was twisting his arm and the officer didn't "give [him] a chance."

On January 28, 1974, the local Liquor Control Commissioner (Rauschenberger) entered an order revoking the Latin Club's liquor license. The order made specific findings on the factual questions which were presented at the hearing, resolving them in each instance against the Latin Club. The order found that Alvarado was the president, manager and principal shareholder of the Latin Club, and that he had committed "acts of violence in violation of State statutes and ordinances" and was "of such character and reputation" that the Latin Club's retention of its liquor license would constitute "a threat to the well being of the community and to the persons in or near the licensed premises."

The Latin Club then began an unsuccessful effort to obtain administrative relief. On January 29, 1974, the Latin Club filed an appeal of the revocation order with the Illinois Liquor Control Commission. On January 31, 1974, the Illinois Liquor Control Commission acknowledged the filing of the appeal, and ordered the local Liquor Control Commissioner to permit the Latin Club to remain open during the pendency of the appeal. On March 11, 1974, arguments of counsel were heard by the Illinois Liquor Control Commission. On April 19, 1974, the Latin Club filed an application with the City of Elgin for a renewal of its liquor license. On May 2, 1974, the Latin Club was informed that its application for renewal had been denied. On May 8, 1974, the City of Elgin passed an ordinance reducing the number of Class A liquor licenses by one. Then, on July 7, 1974, the Illinois Liquor Control Commission entered orders affirming the local Liquor Control Commissioner's order revoking the Latin Club's liquor license and the denial of the Latin Club's application for renewal of its license. On July 3, 1974, the Illinois Liquor Control Commission denied the Latin Club's application for rehearing, and the Latin Club filed a complaint for administrative review in the circuit court of Kane County on August 9, 1974.

The Latin Club's proceedings in the circuit court met with the success which had eluded it before the Illinois Liquor Control Commission. The circuit court entered an order staying the enforcement of the local Liquor Control Commissioner's orders of revocation and nonrenewal

during the pendency of the administrative review proceedings. The local Liquor Control Commissioner moved to dismiss the Latin Club's complaint for administrative review, on grounds of mootness, the motion being supported by a copy of the ordinance of May 8, 1974, and an affidavit from William Rauschenberger stating that all retail liquor licenses authorized by the City of Elgin had been issued; this motion was denied. Finally, after reviewing the report of proceedings before the local Liquor Control Commissioner and hearing arguments of counsel, the circuit court of Kane County entered an order on January 14, 1976, holding that the Illinois Liquor Control Commission lost jurisdiction to affirm the order of the local Liquor Control Commissioner when it failed to render a decision within 30 days after the appeal was heard, as required by statute (Ill. Rev. Stat. 1973, ch. 43, par. 153), and that the findings of the local Liquor Control Commissioner were "against the great weight of the evidence and contrary to Illinois law." The circuit court, therefore, reversed the orders revoking the liquor license of the Latin Club.

The Latin Club filed a motion and supporting affidavit in this court to dismiss the appeal of William Rauschenberger, on the grounds that on April 16, 1975, Richard L. Verbic was elected mayor of Elgin and that Rauschenberger, therefore, had no authority or capacity to prosecute this appeal. In response, Richard L. Verbic, current mayor and a member of Elgin's new Liquor Control Commission, filed an affidavit indicating that the City Council of Elgin authorized the appeal, and that a motion would be filed in this court to substitute the proper party. This court subsequently granted a motion by Richard L. Verbic to be substituted for William Rauschenberger as party defendant-appellant, pursuant to this court's authority under Supreme Court Rule 366, and denied the Latin Club's motion to dismiss the appeal. Having disposed of this peripheral issue, we are now free to attack the merits of the instant appeal, including the question of whether this case was rendered moot by the ordinance of May 8, 1974.

■■ The Illinois Liquor Control Act delegates to municipalities the power to "determine the number, kind and classification of licenses" (Ill. Rev. Stat. 1975, ch. 43, par. 110), and expressly provides that municipalities may decrease the number of licenses to be issued, even where such action will lead to the nonrenewal of one of the existing licenses. (Ill. Rev. Stat. 1975, ch. 43, par. 119; *Oak Park National Bank v. Village of Broadview* (1963), 27 Ill. 2d 151, 153-54.) In *Oak Park National Bank* an ordinance reducing the number of available liquor licenses by one was upheld, in spite of the fact that an appeal to the Illinois Liquor Control Commission by an applicant who had been denied a license was pending at the time of the enactment of the ordinance, and in *Wernikoff*

*v. Vannemann* (1975), 26 Ill. App. 3d 715, an action for a writ of mandamus to compel a local liquor control commissioner to issue a liquor license to the petitioner was held to have been rendered moot by the expiration of the applicable one year licensing period and the enactment of an amendment to the local liquor ordinances which repealed the ordinance upon which the trial court's ruling in the mandamus action had been based. Thus, there is both statutory and judicial authority supporting the proposition that a municipality may reduce the number of available liquor licenses at any time, and that such a reduction, if not capricious, wholly arbitrary, or otherwise illegal, can render the issues in an administrative appeal from the denial of an application for a liquor license moot. In our view, this case is unlike *Oak Park National Bank v. Village of Broadview, Wernikoff v. Vannemann,* and *Schreiber v. Illinois Liquor Control Com.* (1957), 12 Ill. 2d 118, also cited by the local Liquor Control Commissioner, since it involves not the denial of an application for a liquor license, but the revocation of an existing license, and a denial of an application for renewal based upon the revocation. (See also *Tanner v. Liquor Control Com.* (1959), 16 Ill. 2d 517; *Pence v. Village of Rantoul* (1973), 12 Ill. App. 3d 446.) While, for example, in *Wernikoff,* the court was able to state that, "[i]n any respect, so far as we know, there is nothing that would prevent the petitioner from applying for a current liquor license, if any be available" (26 Ill. App. 3d 715, 719-20), in this case the Latin Club would probably be effectively barred from obtaining a new liquor license by the local Liquor Control Commissioner's finding in the proceedings at issue here, unless Alvarado ceased to be president, manager and shareholder, since the effect of a finding of conduct causing revocation of a liquor license continues beyond the life of the liquor license. *Alpern v. License Appeal Com.* (1976), 38 Ill. App. 3d 565.

■■ It is thus clear that the instant appeal presents an actual controversy, the resolution of which will directly affect the interests of the Latin Club, and that the issues presented here are not moot. See *Kern v. Chicago & Eastern Illinois R.R. Co.* (1963), 44 Ill. App. 2d 468, *cert. denied* (1964), 379 U.S. 825, 13 L. Ed. 2d 35, 85 S. Ct. 51.

■■ However, we find ourselves in disagreement with the trial court's holding that the Illinois Liquor Control Commission lost jurisdiction to affirm the order of the local Liquor Control Commissioner when it failed to render a decision within 30 days after hearing the appeal. The applicable statutory provision provides that in the event that an appeal is taken from an order of the local Liquor Control Commissioner of a home rule municipality of less than 500,000 inhabitants, "[t]he State Commission *shall* render a decision affirming, reversing or modifying the order or action reviewed within 30 days after the appeal was heard." (Ill.

Rev. Stat. 1973, ch. 43, par. 153.) (Emphasis added.) In our view, this provision is merely directory, and the trial court was in error in holding that a reversal of the State Commission's order is mandated by the fact that the Illinois Liquor Control Commission failed to render a decision within 30 days.

■■ While we find no authority directly on point, certain established rules of construction are of considerable value in determining whether or not the provision in question was intended to be mandatory, or merely directory. At the outset, it should be noted that the legislative use of the word "shall" does not require a holding that the section is mandatory, since the word "shall" has been construed as meaning either "must" or "may," depending on legislative intent. (*E.g., In re Armour* (1974), 59 Ill. 2d 102, 104.) A statute which specifies the time of performance for an official duty will ordinarily be considered directory where the statute does not contain negative words denying the exercise of the power after the time named, and a violation of its provisions will not ordinarily cause any injury to public interests or property rights, or the rights of the parties. (*Village of Park Forest v. Fagan* (1976), 64 Ill. 2d 264.) Further, the Illinois Liquor Control Act expressly provides that it "shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected * * *." Ill. Rev. Stat. 1975, ch. 43, par. 94.

Applying these rules of construction, it becomes apparent that the legislature intended that the provision be merely directory. The statute contains no negative words denying the exercise of power after the time named. The licensee is not normally prejudiced by a delay of the Illinois Liquor Control Commission in rendering a decision, since the Liquor Control Act contemplates that the licensed premises shall remain open during the pendency of the appeal. (Ill. Rev. Stat. 1973, ch. 43, par. 149.) A construction of the statute which would allow a licensed premises, which is being operated in such a manner as to constitute a peril to the public peace and welfare, to escape the effect of the license revocation order because of an oversight by the Illinois Liquor Control Commission, would be injurious to the public interest and property rights, while to construe the statute as merely directory does not lead to such a result. Thus, if the liberal construction contemplated by the Liquor Control Act is placed upon the provision, it must be held to be merely directory.

*Carrigan v. Liquor Control Com.* (1960), 19 Ill. 2d 230, 232, is supportive of this conclusion. There the court construed a provision of the Liquor Control Act which stated that the Illinois Liquor Control Commission "shall receive and consider" applications for rehearing "within 20 days from the filing thereof." The statute construed in *Carrigan* was similar to the current statute, in that it contained no express negative

words which denied the State Commission the power to act after the designated period, and provided that the licensed premises would remain open until after the disposition of the petition for rehearing. In view of these factors, the court held that the provision in question was merely directory.

The Latin Club has relied upon *Johnkol, Inc. v. License Appeal Com.* (1969), 42 Ill. 2d 377, and *Ingram v. License Appeal Com.* (1971), 131 Ill. App. 2d 218, where the courts held that a provision which required the License Appeal Commission to render a decision within 20 days was mandatory, to support its assertion that the statutory language calling for a decision by the Illinois Liquor Control Commission within 30 days is not merely directory. This reliance is misplaced. Of course, like *Carrigan*, neither *Johnkol* nor *Ingram* involve the statutory provision at issue here. However, the crucial distinction between *Johnkol, Ingram*, and this case, is that the statute construed in *Johnkol* and in force at the time of the administrative proceedings in *Ingram*, did not allow licensees the privilege of resuming the operation of their businesses during the pendency of their appeals to the License Appeal Commission. Here (as in *Carrigan*), the applicable statute permits the licensee to continue the operation of its business, even while the administrative appeal is pending. The element of serious, or even grievous, harm by reason of a forced closure during the administrative proceedings which was critical in *Johnkol*, and present in *Ingram*, is lacking here. (See *Alpern v. License Appeal Com.* (1976), 38 Ill. App. 3d 565.) We therefore believe that the circuit court erred when it held that the statutory provision calling for the Illinois Liquor Control Commission to render a decision within 30 days after hearing an appeal is mandatory.

■■ Finally, we find that the circuit court erred in holding that the factual findings of the Local Liquor Control Commissioner, and the Illinois Liquor Control Commission, were "against the greater weight of the evidence," and therefore in error. Neither the circuit court, nor, for that matter, courts of review, should disturb the decision of a local liquor control commissioner in a proceeding to revoke a liquor license, where that decision is supported by substantial evidence and is not contrary to the manifest weight of the evidence. (*Occhino v. Liquor Control Com.* (1975), 28 Ill. App. 3d 967.) While the evidence presented before the local Liquor Control Commissioner was in certain respects conflicting, our review of the record indicates that there was substantial evidence supportive of the findings of the commissioner, and that those findings were not against the manifest weight of the evidence. It was thus erroneous for the circuit court to substitute its judgment for that of the Local Liquor Control Commissioner.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded with directions to enter an order affirming the decision of the Illinois Liquor Control Commission.

Reversed and remanded with directions.

SEIDENFELD and GUILD, JJ., concur.