PUSS N BOOTS, INC., Emanuel Perrino, Licensee, Plaintiff-Appellant, v. THE MAYOR'S LICENSE COMMISSION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—91—0789

Opinion filed June 26, 1992.—Supplemental opinion filed on denial of rehearing August 14, 1992.

Morton Siegel, Michael A. Moses, James L. Webster, and Richard G. Schoenstadt, all of Siegel, Moses, Schoenstadt & Webster, of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Brian Trubitt, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is an appeal from an order of the mayor of the City of Chicago revoking the public place of amusement license of the plaintiff, Puss N Boots, Inc.

The plaintiff operated under its license for five years; it provided live entertainment, nude and semi-nude dancing, to consenting adults from its location at 418 North Clark Street in Chicago. On March 20, 1990, the mayor of the City of Chicago served the plaintiff with notice of a hearing to determine whether the plaintiff's licence should be revoked. The notice alleged that on February 24, 1989, three female agents of the plaintiff knowingly made obscene gestures in the presence of others on the plaintiff's premises contrary to chapter 192—7 of the Municipal Code of Chicago. It further alleged that on June 29, 1989, another female agent of the plaintiff knowingly committed an obscene performance contrary to chapter 192—7 of the Municipal Code. Hearings conducted by a hearing officer of the Mayor's License Commission were partially held on March 28, 1990, May 16, June 13 and completed on July 23, 1990. The commission found that the plaintiff had violated chapter 192—7 (currently section 8—8—070) of the Chicago Municipal Code four times. In an order entered September 27, 1990, the mayor revoked the plaintiff's license effective October 7, 1990.

On October 3, 1990, the plaintiff filed a complaint in administrative review in the circuit court. The circuit court subsequently affirmed the revocation of the plaintiff's license.

The plaintiff assigns three separate grounds for reversal. It argues that the specific ordinance addressing indecent acts and words justifies only the imposition of a fine and not revocation of a license; it also contends that the mayor lost jurisdiction to revoke the plaintiff's license for failure to act within a 15-day time period prescribed by an ordinance; it last contends that the mayor's revocation order constituted a clear abuse of discretion. The plaintiff does not maintain that the revocation order was not supported by the evidence. We need address only the plaintiff's argument that the mayor lost jurisdiction to revoke the plaintiff's license.

This case is one of all too many in which the trial judge never had an opportunity to pass on the question of loss of jurisdiction. Contrary to the city's argument, however, the mayor's lack of or loss of jurisdiction may be raised at any time. (See *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893.) Consequently, we must address the question.

Chapter 4—4 of the City of Chicago Municipal Code provides the "General Licensing Provisions." Section 4—4—280 provides the procedures to be followed in suspending or revoking a license:

> "The mayor shall have the power to suspend or revoke any license issued under the provisions of this code for good and sufficient cause or if he determines that the licensee shall have violated any of the provisions of this code or any of the statutes of the state. However, no such license shall be so revoked or suspended except after a public hearing first having given five days written notice of said hearing to the licensee affording the licensee an opportunity to appear and defend. The public hearing shall be held before a license commissioner appointed by the mayor who shall report his findings to the mayor.
>
> ***
>
> If the mayor shall determine after such hearing that the license should be revoked or suspended, within 15 days he shall state the reason or reasons for such determination in a written order of revocation or suspension and shall serve a copy of such order upon the licensee." Chicago Municipal Code §4—4—280 (1991).

Both parties acknowledge that the mayor failed to comply with the 15-day provision of section 4—4—280 because the mayor entered the pertinent order on September 27, 1990, more than two months after the conclusion of the hearing on July 23, 1990.

The city argues that the 15-day provision in the ordinance is directory rather than mandatory. Whether the language of section 4—4—280 is mandatory or directory is the threshold question we must address. Municipal ordinances are interpreted under the rules of statutory construction and interpretation. (*Village of Spring Grove v. Doss* (1990), 202 Ill. App. 3d 858, 563 N.E.2d 793.) The aim of statutory interpretation is to determine the legislative intent; the best evidence of intent is the language of the statute itself. *Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 561 N.E.2d 656.

The interpretation of this particular ordinance turns on the word "shall." The use of "shall" generally indicates a legislative in-

tent to make a law or provision mandatory. (*People v. Porter* (1988), 122 Ill. 2d 64, 521 N.E.2d 1158.) The indication of a mandatory intent is particularly strong when "shall" is addressed to the actions of a public official, as is the case here. *Schmidt v. Powell* (1972), 4 Ill. App. 3d 34, 280 N.E.2d 236.

■■ That section of the Municipal Code providing for "interpretation of language" expressly states that "[t]he word 'shall' as used in this code is mandatory." (Chicago Municipal Code §1—4—100 (1990).) When a statute defines its own terms, "those terms must be construed according to the definitions given to them in the act." (*Benhart v. Rockford Park District* (1991), 218 Ill. App. 3d 554, 558, 578 N.E.2d 600.) We have found no Illinois case involving a statutory definition of "shall," but cases from other jurisdictions are instructive. In *Reed v. Washington Parish Police Jury* (La. App. 1987), 515 So. 2d 635, the Louisiana Appellate Court held that the statutory definition of "shall" as mandatory was controlling, and in *Great Western Savings & Loan Association v. City of Los Angeles* (1973), 31 Cal. App. 3d 403, 107 Cal. Rptr. 359, the California Appellate Court held that the definition of "shall" as "mandatory" in an ordinance was controlling. We conclude, therefore, that "shall" in section 4—4—280 must be interpreted as mandatory.

The cases cited by the city, *People v. Porter* (1988), 122 Ill. 2d 64, 521 N.E.2d 1158, *People v. Cox* (1985), 136 Ill. App. 3d 623, 483 N.E.2d 422, *Cox v. Daley* (1981), 93 Ill. App. 3d 593, 417 N.E.2d 745, and *Alpern v. License Appeal Comm'n* (1976), 38 Ill. App. 3d 565, 348 N.E.2d 271, are not apposite here. The overriding distinction between those cases and the case before us is that in those cases there was no statutory definition of the word "shall." It is clear to us that the city council intended that the word should be construed as mandatory when it expressly said so.

The next question is whether the failure to render the decision within the mandatory time deprived the mayor of jurisdiction. A case much in point is *Cummings v. Daley* (1974), 58 Ill. 2d 1, 317 N.E.2d 22. In that case three complaints were made against the plaintiffs to the City of Chicago Commission on Human Relations. After a hearing, the commission found the plaintiffs guilty of violations of the city housing ordinance. The ordinance provided that the commission was to render a written report after a hearing; it further provided that "[n]o report shall be delayed more than sixty days after the date of the issuance of notice for commencement of the first hearing." (58 Ill. 2d at 4.) The supreme court held that, since the commission rendered its report three days late, the com-

mission had lost jurisdiction and its order was void. Contrary to the city's argument, we judge that *Cummings* is still binding precedent. It has been cited with approval by the supreme court in *Board of Governors v. Fair Employment Practices Comm'n* (1979), 78 Ill. 2d 143, 399 N.E.2d 590, and *Grissom v. Board of Education of Buckley-Loda Community School District No. 8* (1979), 75 Ill. 2d 314, 388 N.E.2d 398.

We do not agree with the city's contention that the legislative history following *Cummings* manifested a legislative intent on the part of the city council that "shall" should be construed as directory. In our judgment, consideration of that legislative history leads to an opposite conclusion. At the time *Cummings* was decided, the general licensing ordinance contained the same definition of "shall" as does the present ordinance. More than five years after *Cummings* was decided, the city council amended the fair housing ordinance to remove the time limitation in which action must be taken after the beginning of a hearing. No change was made in the definition of "shall."

A statutory amendment presumptively represents an intent to change existing law. (*State of Illinois v. Mikusch* (1990), 138 Ill. 2d 242, 562 N.E.2d 168.) That presumption, however, does not apply where the legislature enacted an amendment "soon after" a judicial interpretation. (*Gill v. Miller* (1983), 94 Ill. 2d 52, 58, 445 N.E.2d 330.) A change in the law made more than five years after a judicial interpretation cannot be considered a change made "soon after." We judge, therefore, that the amendment of the fair housing ordinance represented a change in the law, not a manifestation of the original intent of the city council. Moreover, we find it significant that the city council did not see fit to change the definition of "shall" in the general licensing ordinance. That language of section 1—4—100 was in existence when *Cummings* was decided, and was reaffirmed with the enactment of the new municipal code of 1990.

■■ The city also argues that it never had an opportunity to show that any delay from the time the hearings were closed until the time of the mayor's order was caused by the plaintiff because the plaintiff never raised the question of jurisdiction in the trial court. The city does not ask for a remand but, rather, insists on an affirmance. Significantly, unlike *Cummings*, there is nothing in the record to show any delay caused by the plaintiff, and the city has not made any showing of any delay that might have been caused by the plaintiff.

For these reasons we conclude that the mayor lost jurisdiction 16 days after July 23 and that the order entered on September 27, revoking the plaintiff's license, was void.

The judgment of the circuit court is reversed.

Judgment reversed.

McNAMARA and RAKOWSKI, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

PRESIDING JUSTICE EGAN delivered the opinion of the court:

■ In the petition for rehearing the city argues that we should hold that the failure to comply with the time requirements of the ordinance is not jurisdictional. In support of that argument the city maintains that our holding will have a crippling effect on its ability to properly enforce licensing laws. The city has conjured up several examples of ordinance violators being possibly excused from appropriate sanctions.

We have two brief answers to the city's arguments. In *Johnkol, Inc. v. License Appeal Comm'n* (1969), 42 Ill. 2d 377, 247 N.E.2d 901, the License Appeal Commission was required by statute to render a decision within 20 days of the filing of an appeal. The supreme court said that this language was mandatory. The supreme court could not have been more clear on the effect on jurisdiction by failure to comply with a mandatory duty:

> "The language of the statutory time limitation is mandatory, and while the consequence of loss of jurisdiction for noncompliance is not explicitly stated, the legislative purpose is unmistakable when the amendment is read in the light of the decisions which immediately preceded its enactment. We hold, therefore, that by its failure to render a decision within the period limited by the statute, the License Appeal Commission lost jurisdiction to affirm the order of the Local Liquor Control Commissioner." 42 Ill. 2d at 383-84.

The two cases cited by the city are *Carrigan v. Illinois Liquor Control Comm'n* (1960), 19 Ill. 2d 230, 166 N.E.2d 574, and *Latin Social Club, Inc. v. Illinois Liquor Control Comm'n* (1977), 54 Ill. App. 3d 798, 370 N.E.2d 109. Those cases are not in point because in each of those cases the court construed the time restrictions imposed to be directory.

With respect to the city's argument that our holding will impose a severe administrative burden on the city's licensing machinery, we have a simple answer: Change the ordinance. That is precisely what was done after *Cummings v. Daley* was decided.

McNAMARA and RAKOWSKI, JJ., concur.