SIP AND SAVE LIQUORS, INC., Plaintiff-Appellant, v. RICHARD M. DA-LEY, Mayor and Local Liquor Control Commissioner of the City of Chicago, and William D. O'Donaghue, Chairman of the License Appeal Commission, Defendants-Appellees.

First District (3rd Division)    No. 1—93—0760

Opinion filed September 6, 1995.—Rehearing denied November 9, 1995.

1010

Lamendella & Daniel, of Chicago (Joseph A. Lamendella and Kris Daniel, of counsel), for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Sip & Save Liquors, Inc., an Illinois corporation, appeals from the revocation of its retail liquor license. It argues on appeal that: (1) the City of Chicago Local Liquor Control Commission (the commission) lost jurisdiction when it did not timely issue a decision; (2) plaintiff was denied due process; and (3) revocation was an unreasonable penalty.

One of the issues in this case is whether the City of Chicago Local Liquor Control Commission lost jurisdiction to impose any sanction when it failed to render a decision within the mandatory 15-day period prescribed by section 4—4—280 of the Chicago Municipal Code (the Code) (Chicago Municipal Code § 4—4—280 (1990)) and the holding in *Puss N Boots, Inc. v. Mayor's License Comm'n* (1992), 232 Ill. App. 3d 984, 597 N.E.2d 650, or whether instead the Illinois Liquor Control Act of 1934 (235 ILCS 5/1—1 *et seq.* (West 1992)) (the Liquor Act) was applicable.

The commission charged in a notice of hearing to plaintiff that on August 19, 1990, the Code was violated when Thomas Shubalis, plaintiff's president, possessed an unregistered Winchester .22-caliber rifle, a Harlin 20-gauge shotgun, a Ruger .357 magnum firearm, and a .25-caliber automatic firearm. It was also charged that Shubalis violated State law by possessing firearms without possessing an Illinois firearm owner's identification card. The notice also charged that on August 29, 1990, plaintiff sold or gave alcoholic beverages on the licensed premises to a person under the age of 21 years.

The notice stated that the city would present evidence of previous acts of misconduct. Attached as exhibits were orders of dispositions of previous charges: (1) sale to a minor on November 4, 1983, resulting in a warning on July 18, 1984; (2) sale to a minor on January 11, 1985, resulting in a warning on July 17, 1985; and (3) sale to

a minor on August 31, 1985, resulting in a $300 voluntary fine on April 29, 1986.

A hearing was held before the commission on January 17, February 14, and April 4, 1991.

Chicago police officer Anthony Wilczak testified at the hearing that he responded to a burglary alarm on August 19, 1990, at plaintiff's liquor store. He searched the premises and found a .357 magnum revolver and a .25-caliber automatic pistol below the cash register on the shelf. He asked Shubalis about the guns, and Shubalis said that the guns were his brother's. Shubalis also said that he did not know where the .22-caliber rifle came from and that the sawed-off shotgun belonged to a friend of his brother. He did not find a firearm owner's identification card when he searched Shubalis nor did he find a city registration for any of the weapons.

Chicago police officer Sharon Gaynor testified at the hearing that she recovered in the search a sawed-off 20-gauge shotgun and a Winchester rifle, which were found in a large safe in a back storage area. The safe was open, and the guns were lying in the safe.

Chicago police officer Michael Malone testified at the hearing that on August 29, 1990, he observed a person appearing to be a minor leaving the liquor store carrying a case of beer.

On April 26, 1991, Richard M. Daley, mayor and local liquor control commissioner of the City of Chicago, revoked plaintiff's City of Chicago retail liquor license. The order stated that the proceedings were instituted pursuant to the Liquor Act (Ill. Rev. Stat. 1989, ch. 43, pars. 93.9 through 195). The order made the following findings: (1) on or about August 19, 1990, the licensee possessed unregistered firearms (Harlin 20-gauge shotgun, Ruger .357 magnum firearm, and .25-caliber automatic firearm) on the licensed premises in violation of former section 11.1—13 of chapter 11.1 of the Code (Chicago Municipal Code § 11.1—13 (1984) (now codified as Chicago Municipal Code § 8—20—150 (1995))); (2) on or about August 19, 1990, the licensee possessed firearms on the licensed premises without possessing a firearm owner's identification card issued by the State of Illinois in violation of State law; and (3) on or about August 29, 1990, plaintiff sold or gave alcoholic beverages on the licensed premises to a person under 21 years of age in violation of former section 147—14 of chapter 147 of the Code (Chicago Municipal Code § 147—14 (1984) (now codified as Chicago Municipal Code § 4—60—140(a) (1993))).

Plaintiff appealed to the City of Chicago License Appeal Commission (the appeal commission), which affirmed Daley's action on September 30, 1991. Plaintiff's petition for rehearing was denied by the appeal commission on November 6, 1991.

On December 6, 1991, plaintiff filed a complaint in administrative review against defendants Daley and William D. O'Donaghue, chairman of the appeal commission.

On May 6, 1992, the trial court found the following: (1) finding charge number one (Harlin 20-gauge shotgun) was sustained; (2) the other findings were not sustained; (3) the matter was remanded to the commission to consider its order of revocation with respect to finding against the plaintiff on charge number one.

On June 6, 1992, the commission reconfirmed the revocation of the license based on the finding that the owner possessed an unregistered Harlin 20-gauge shotgun.

On August 14, 1992, the trial court reversed the order reconfirming revocation and remanded the matter for a hearing by the commission on the penalty in view of the fact that the charges were modified. The commission was ordered not to consider the charges that were not sustained by the trial court. It was also ordered that both parties would have a full hearing in aggravation and mitigation.

A hearing on the penalty was held on October 8, 1992, before the commission. During Chicago police officer Lawrence Seidler's testimony, plaintiff made an oral motion *in limine* based on the following: (1) the charge was the failure to exhibit a registration certificate and not the possession of a sawed-off shotgun; and (2) the shotgun was destroyed by the police. The motion was denied.

Officer Seidler testified that the barrel of the shotgun was 14 inches long and that a portion of the stock was sawed off.

Thomas Shubalis testified at the hearing that the liquor store had been in business at the same location for 17 years. He recognized the shotgun and had seen it once before on the premises. He did not believe that the shotgun was on the premises on August 19, 1990. The shotgun had been brought in by a neighbor who was moving and who was going to pick up the gun in a couple of days. The shotgun then had no shells in it, and it was broken in half. The shotgun had been on the premises in a storeroom safe for a number of years but he thought it had long been removed and never even thought of it. The safe was not used, and it was hardly visible because there were liquor boxes in front of it. He never had occasion to open the safe between the time he saw the shotgun and the time of the burglary. He had no registration for the shotgun.

On October 14, 1992, plaintiff moved in the trial court to reverse all orders of the commission and the appeal commission on the basis that the mayor lost jurisdiction to revoke the liquor license. The hearings had terminated on April 4, 1991, and the decision was rendered on April 26, 1991, which was later than the mandatory 15-day period.

On October 16, 1992, the commission sustained "charge one" and revoked the license. The following findings of fact were made. Shubalis admitted that he first saw the sawed-off shotgun eight or nine years before the burglary and that he did nothing to assure that the shotgun was removed from the premises. Shubalis' testimony that the gun was hidden in the old safe and that he did not even think about it after first seeing it was not credible. The licensee had a history of three prior violations, one of which resulted in a fine of $300. The weapon was an extremely dangerous type of weapon. In light of the serious nature of the offense, revocation was appropriate.

On January 22, 1993, the trial court denied plaintiff's motion to reverse and to reinstate the license, denied plaintiff's motion to reverse the post-remand order of revocation, and affirmed the order of revocation.

Plaintiff filed a notice of appeal on February 19, 1993.

## I. JURISDICTION

Plaintiff first argues that the commission lost jurisdiction to impose any sanction when it failed to render a decision within the 15 days following the hearing as prescribed by section 4—4—280 of the Code (Chicago Municipal Code § 4—4—280 (1990)), which was amended in 1992 to expand the time period to 60 days (Journal of the Proceedings of the City Council of the City of Chicago, July 29, 1992, at 20041-42). If the proceedings were initiated exclusively under the Liquor Act, then the procedural requirements of section 7—5 of the Liquor Act were not met (235 ILCS 5/7—5 (West 1994)). The term "shall" was mandatory and not directory.

The first issue is whether section 4—4—280 of the Code applied to the revocation of plaintiff's liquor license. It states in part:

"The mayor shall have the power to *** suspend or revoke any license issued under the provisions of this code ***.
***
If the mayor shall determine after [a] hearing that the license should be revoked or suspended, within 60 days he shall state the reason or reasons for such determination in a written order of revocation or suspension ***." (Chicago Municipal Code § 4—4—280 (1994).)

According to the Journal of the Proceedings of the City Council of the City of Chicago, the ordinance was:

"intended to ratify prior actions of the Mayor in revoking licenses and *** shall apply to all cases in which licenses have been revoked *** within 60 days of the conclusion of a hearing required by Section 4—4—280 ***." Journal of the Proceedings of the City Council of the City of Chicago, July 29, 1992, at 20042.

■ Section 4—4—280 states that it is applicable to the revocation of any license, and it does not exempt liquor licenses. Section 4—60—070 of the Code states that a liquor license shall be issued subject to chapter 4—4, the chapter in which section 4—4—280 appears.[1] (Chicago Municipal Code § 4—60—070 (1994).) We find that section 4—4—280 covers liquor licenses.

The next issue is whether section 7—5 of the Liquor Act, with its requirement that a statement of reasons for revocation be given within five days of hearing, controls over Code section 4—4—280's time frame of 60 days. Section 7—5 of the Liquor Act states in part:

"The local liquor control commissioner shall within 5 days after [a] hearing, if he determines after such hearing that the license should be revoked or suspended or that the licensee should be fined, state the reason or reasons for such determination in a written order ***." 235 ILCS 5/7—5 (West 1994).

■ Liquor control is subject to concurrent jurisdiction of the State and local government. (*Easter Enterprises, Inc. v. Illinois Liquor Control Comm'n* (1983), 114 Ill. App. 3d 855, 858-59, 449 N.E.2d 1013.) Home rule municipalities such as Chicago may legislate in the area of liquor control, except as restricted by the State, pursuant to the home rule provisions of the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, § 6). (*Easter*, 114 Ill. App. 3d at 858-59.) Courts have approved local liquor ordinances in home rule municipalities that were either more restrictive than State statutes on the same subject matter or that placed additional requirements on licensees not found in State statutes. *Easter*, 114 Ill. App. 3d at 859.

Section 4—60—070 states that provisions of the Code chapter relating to licenses in general would govern liquor licenses except when they were inconsistent with "the law relating to alcoholic liquor." (Chicago Municipal Code § 4—60—070 (1994).) The ordinance also states that the license was subject to the provisions of the Liquor Act. The Liquor Act enumerates in section 4—1 certain powers of municipalities, including the power "to establish *** regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require." 235 ILCS 5/4—1 (West 1992).

---

[1]Section 4—60—070(a) of title four of the Code states in part that "[a] city retailer's *license for the sale of alcoholic liquor shall be issued* by the local liquor control commissioner, subject *to the provisions of* an act entitled 'An Act relating to alcoholic liquor,' approved January 31, 1934, as amended, and subject to the provisions of this chapter and *Chapter 4—4 relating to licenses in general* not inconsistent with the law relating to alcoholic liquor." (Emphasis added.) Chicago Municipal Code § 4—60—070 (1994).

■ The Code's time limit is not just different than State law but expands a time limit established by State law. The longer time period is not a further restriction or an additional requirement. (*Easter*, 114 Ill. App. 3d at 859.) The Code's longer time for the issuance of the penalty decision is inconsistent with the five-day time limit in the Liquor Act. Under the terms of the Code and the Liquor Act, the inconsistent 15- and 60-day limits cannot stand. (*Village of Mundelein v. Hartnett* (1983), 117 Ill. App. 3d 1011, 1015, 454 N.E.2d 29 (where there is a conflict between a statute and an ordinance, the ordinance must give way).) The State five-day limitation for issuing a revocation decision prevails over the Code.

The case of *Puss N Boots, Inc. v. Mayor's License Comm'n* (1992), 232 Ill. App. 3d 984, 597 N.E.2d 650, was an appeal from an order of the mayor of the City of Chicago revoking the public place of amusement license of the plaintiff. Plaintiff argues that this court should follow the decision in *Puss N Boots*. One of the issues in that case was whether the mayor had lost jurisdiction to revoke the public place of amusement license because of failure to act within a 15-day time period prescribed by ordinance section 4—4—280. The court pointed out that the Code section providing for "interpretation of language" expressly stated that "[t]he word 'shall' as used in this code is mandatory." (*Puss N Boots*, 232 Ill. App. 3d at 987.) The court concluded that "shall" in section 4—4—280 was mandatory and therefore the failure to render a decision within the mandatory time deprived the mayor of jurisdiction. *Puss N Boots*, 232 Ill. App. 3d at 987-89.

We agree with the decision rendered in the *Puss N Boots* case. The word "shall" in section 4—4—280 of the Municipal Code of Chicago is mandatory rather than directory, and the commission would have lost jurisdiction when the mayor failed to act within the 15-day period in this case if only the local code were involved. However, liquor control is subject to concurrent jurisdiction of the State and the City of Chicago. (*Easter Enterprises, Inc. v. Illinois Liquor Control Comm'n* (1983), 114 Ill. App. 3d 855, 858-59, 449 N.E.2d 1013.) In this case, the order of April 26, 1991, was issued by Richard M. Daley as mayor and local liquor control commissioner. The order also stated that the proceedings were instituted pursuant to the Liquor Act. In the *Puss N Boots* case, the State of Illinois had no involvement in the revocation of a Chicago public place of amusement license whereas in this case the proceedings were conducted subject to the Liquor Act. We find that the *Puss N Boots* case is distinguishable from the case *sub judice* and is not controlling.

The next issue is whether the failure to issue the reasons for re-

vocation within the five-day period provided by State law deprived the commission of jurisdiction. If the five-day requirement of the Liquor Act was mandatory and not directory, then the failure to act within the required time meant the commission did not have jurisdiction to act beyond the time limit. See *Johnkol, Inc. v. License Appeal Comm'n* (1969), 42 Ill. 2d 377, 383-84, 247 N.E.2d 901 (failure of liquor license appeal commission to render a decision within 20 days of filing the appeal as required by State law resulted in loss of jurisdiction for noncompliance).

Section 7—5 of the Liquor Act states that the local liquor control commissioner "shall" within five days of the hearing state the reasons for revocation. (235 ILCS 5/7—5 (West 1994).) The word "shall" generally is mandatory and not directory, but it can be construed as meaning "may" depending on the legislative intent. (*Village of Mundelein v. Hartnett* (1983), 117 Ill. App. 3d 1011, 1016, 454 N.E.2d 29.) Generally, statutory regulations designed "to secure order, system and dispatch in proceedings, and by a disregard of which the rights of interested parties cannot be injuriously affected," are not mandatory unless they are accompanied by negative language that imports that the acts required shall not be done in any other manner or time than designated. (*Village of Mundelein*, 117 Ill. App. 3d at 1016.) If a statute is mandatory, it prescribes the result that will follow if the required acts are not done; if the statute is directory, then its terms are limited to what is required to be done. (*Village of Mundelein*, 117 Ill. App. 3d at 1016.) The failure to comply with a mandatory provision will render void the proceeding to which the provision relates, but strict observance of a directory provision is not essential to the validity of the proceedings. *Village of Mundelein*, 117 Ill. App. 3d at 1016.

*Alpern v. License Appeal Comm'n* (1976), 38 Ill. App. 3d 565, 567, 348 N.E.2d 271, was the first decision that held that the Liquor Act's five-day requirement was directory so that a revocation issued beyond that time was valid and the commissioner did not lose jurisdiction. The court adopted the reason that ordinarily a statute that specifies the time for the performance of an official duty will be considered directory only where the rights of the parties cannot be injuriously affected by the failure to act within the time indicated. (*Alpern*, 38 Ill. App. 3d at 567.) The court also noted that the Liquor Act provided that it was to be liberally construed to protect the welfare of the people. (*Alpern*, 38 Ill. App. 3d at 567.) The five-day provision did not contain language denying the exercise of the power after the time named and no right of plaintiff would be injuriously affected by a failure to serve the revocation order timely. *Alpern*, 38 Ill. App. 3d at 568.

Several first district cases have followed *Alpern*: *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 475, 371 N.E.2d 1116; *Rincon v. License Appeal Comm'n* (1978), 62 Ill. App. 3d 600, 606, 378 N.E.2d 1281; *Watra, Inc. v. License Appeal Comm'n* (1979), 71 Ill. App. 3d 596, 600, 390 N.E.2d 102; and *Cox v. Daley* (1981), 93 Ill. App. 3d 593, 595-96, 417 N.E.2d 745.

*Miller v. Daley* (1973), 14 Ill. App. 3d 394, 397, 302 N.E.2d 347, stated that the five-day limit was mandatory but found that the order was served within the period prescribed by the statute so that the conclusion that it was mandatory was *dictum*. (See *Alpern*, 38 Ill. App. 3d at 568 (the interpretation in *Miller* was *dictum*).) The weight of the authority is that the five-day period is directory.

■ We concur with the cases finding that the failure to act in five days does not result in the loss of jurisdiction because even though the word "shall" is used, (1) the Liquor Act is to be liberally construed to protect the welfare of the people (235 ILCS 5/1—2 (West 1992)), and a construction voiding a late revocation order would not serve the welfare of the people; (2) the licensee was not injured by a late decision as he continued to run his business until the license was revoked; and (3) the Liquor Act does not provide that jurisdiction is lost after the five-day period.

## II. DUE PROCESS

Plaintiff next argues that the plaintiff was denied due process because the shotgun was destroyed and a police officer was permitted to testify about the measurements of one barrel of the shotgun. Plaintiff was also denied due process because he did not receive notice of the charge of possession of a sawed-off shotgun. The penalty was based on possession of a sawed-off shotgun, which was a separate offense from the charge of possession of an unregistered shotgun.

■ Plaintiff did not object to the testimony concerning the shotgun at the first hearing, which was when the charges were tried. A motion *in limine* was not made at the first hearing. Plaintiff did not raise the issue of the denial of due process based on destruction of the shotgun until the penalty hearing. Therefore, that issue was waived. *Harbor Insurance Co. v. Arthur Andersen & Co.* (1986), 149 Ill. App. 3d 235, 240, 500 N.E.2d 787.

■ The charge of possessing an unregistered shotgun was stated in the notice of hearing to be a violation of former section 11.1—13 of chapter 11.1 of the Code, which is now codified as section 8—20—150. Section 8—20—150 of the Code requires one to exhibit a valid registration certificate. (Chicago Municipal Code § 8—20—150 (1995).) Section 8—20—040 of the Code states in part that no person shall

within the city possess or have under his control any firearm unless he holds a valid registration certificate for that firearm. (Chicago Municipal Code § 8—20—040(a) (1990).) A sawed-off shotgun is unregisterable. (Chicago Municipal Code § 8—20—050(a) (1995).) Although the predecessor of section 8—2—150 was cited in the notice of hearing instead of the predecessor of section 8—20—040, plaintiff received adequate notice that he was charged with possessing an unregistered sawed-off shotgun. From the beginning of the proceedings plaintiff knew that possession of a shotgun was the issue.

## III. REVOCATION

Plaintiff next argues that the revocation was unreasonable. Plaintiff had no duty to register a firearm and display a registration certificate for a firearm that was unregisterable, that the licensee did not own, and that the licensee did not constructively possess. The revocation order states that the ordinance violated was section 8—20—150 requiring a registration certificate (Chicago Municipal Code § 8—20—150 (1995)), but the conduct was described as possession of an unregistered firearm, which was prohibited by section 8—20—040 (Chicago Municipal Code § 8—20—040 (1990)).

Plaintiff further argues that the finding of possession was erroneously based on the fact that the licensee had knowledge of the presence of the shotgun on the premises eight or nine years earlier. Plaintiff operated the business for 17 years. In a two-year period plaintiff was charged with three separate sales of alcohol to minors, but there was no other record of wrongful conduct. Failure to display a certificate was the most venial of the firearms offenses and should have resulted in a more lenient sanction of either fine or suspension. There was no evidence that the shotgun was functional.

The second revocation order issued does not refer to the specific ordinance violated, as plaintiff contends, but merely states that "charge one" was sustained. The order should have referred to the first "finding" of the revocation order, which was that plaintiff possessed an unregistered shotgun, because the first charge in the notice of hearing was possession of a rifle. Plaintiff was informed as to the basis for the revocation. Furthermore, the findings of the commission were given, and they emphasized the possession of the shotgun.

■ The licensee was found to have possessed an unregistered gun and was not found guilty of the offense of failing to register the unregisterable shotgun. Therefore the licensee was not punished for failing to perform an impossible act, and *United States v. Dalton* (10th Cir. 1992), 960 F.2d 121, is distinguishable. The *Dalton* court held that due process barred a conviction under a statute that

required registration of a firearm where the subject firearm could not be legally registered. (*Dalton*, 960 F.2d at 124.) Section 8—20—040 does not only state that one cannot possess an unregistered gun (which would imply that the gun was registerable); the ordinance precludes possession of any firearm that is unregisterable. Chicago Municipal Code § 8—20—040 (1995).

■ The next issue is whether the licensee possessed the shotgun within the meaning of section 8—20—040(a), which states that no person shall "possess, harbor, have under his control, *** or accept" any unregisterable firearm. (Chicago Municipal Code § 8—20—040(a) (1995).) Although there were employees who had access to the room where the shotgun was located, the shotgun was at the licensee's place of business so that it can be inferred that the licensee had control over the area where the shotgun was found.

The appellate court may reverse the commission's decision only if the manifest weight of the evidence supports the opposite conclusion. (*Lopez v. Illinois Liquor Control Comm'n* (1983), 120 Ill. App. 3d 756, 762-63, 458 N.E.2d 599.) Section 7—5 of the Liquor Act permits revocation if the licensee violated any provisions of the Act or any ordinance of the municipality or any rule of the local liquor control commission (235 ILCS 5/7—5 (West 1994)), but the violation must fairly relate to the control of liquor. *Lopez*, 120 Ill. App. 3d at 761, 765.

The shotgun was deemed to be especially dangerous because it was unregisterable. The presence of this firearm on the premises jeopardized the safety of the public because employees of the licensee would have access to it. On the other hand, the business had been operated for 17 years with only three other charges. There were factors going in favor of and against revocation. A less severe penalty could have been imposed, but under the abuse of discretion standard, the revocation must be upheld.

The judgment of the trial court is affirmed.

Affirmed.

RIZZI and TULLY, JJ., concur.